[Cite as *In re Brothers Publishing Co., L.L.C.*, 2015-Ohio-454.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| IN RE BROTHERS PUBLISHING | : | |
| COMPANY, LLC dba | : | |
| THE EARLY BIRD | : | C.A. CASE NO.   2014-CA-11 |
| | : | |
| | : | T.C. NO.   12CV645 |
| | : | |
| | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___6th___ day of ____February____, 2015.

. . . . . . . . . .

GARY J. LEPPLA, Atty. Reg. No. 0017172 and PHILIP J. LEPPLA, Atty. Reg. No. 0089075, 2100 S. Patterson Blvd., Dayton, Ohio 45409
    Attorneys for Appellant, Civitas Media, LLC, dba The Daily Advocate

LOUIS A. COLOMBO, Atty. Reg. No. 0025711, PNC Center, 1900 East 9th Street, Suite 3200, Cleveland, Ohio 44114
    Attorney for Amicus Curiae Ohio Newspaper Association

NICOLE L. POHLMAN, Atty. Reg. No. 0086301 and ERIC H. BRAND, Atty. Reg. No. 0004986, 100 Washington Avenue, P. O. Box 158, Greenville, Ohio 45331
    Attorneys for Appellee, Brothers Publishing Company, LLC, dba The Early Bird

LUTHER L. LIGGETT, JR., Atty. Reg. No. 0004683 and DAVID M. SCOTT, Atty. Reg. No. 0068110, 10 West Broad Street, #1320, Columbus, Ohio 43215
    Attorneys for Amicus Curiae Community Papers

MARGARET B. HAYES, Atty. Reg. No. 0042031, Darke County Courthouse, 3rd floor, Greenville, Ohio 45331
    Attorney for Appellee

. . . . . . . . . . . . .

FROELICH, P.J.

**{¶ 1}** Civitas Media, L.L.C., dba *The Daily Advocate,* appeals from a declaratory judgment rendered in favor of Brothers Publishing Company, L.L.C., dba *The Early Bird Newspaper.* The trial court held that *The Early Bird* is "a newspaper of general circulation for Darke County, Ohio, and is entitled to publish legal notices and information pursuant to R.C. 7.10 and other sections of Ohio law."

**{¶ 2}** On appeal, Civitas Media contends that the evidence did not support the trial court's conclusions that *The Early Bird* meets all of the requirements of R.C. 7.12 to be a newspaper of general circulation. Specifically, Civitas Media asserts that the evidence did not demonstrate that *The Early Bird* has "the ability to add subscribers to its distribution list" or that it supported its statements regarding circulation with "proof of an independent audit of the publication performed, within the twelve months immediately preceding legal publication."

**{¶ 3}** For the following reasons, the trial court's judgment will be affirmed.

## I. Introduction of Relevant Statutes

**{¶ 4}** This action arises out of a dispute between two competing newspaper publishers over the right of one publication, *The Early Bird,* to publish legal notices. Two statutes are relevant to that discussion, R.C. 7.10 and R.C. 7.12.

**{¶ 5}** Prior to September 29, 2011, R.C. 7.10 provided that "Except as provided in section 2701.09 of the Revised Code, all legal advertisements or notices shall be printed in newspapers published in the English language." R.C. 7.12 further stated that:

Whenever any legal publication is required by law to be made in a

newspaper published in a municipal corporation, county, or other political subdivision, the newspaper shall also be a newspaper of general circulation in the municipal corporation, county, or other political subdivision, without further restriction or limitation upon a selection of the newspaper to be used.

* * *

In addition to all other requirements, a newspaper or newspaper of general circulation * * * shall be a publication bearing a title or name, regularly issued as frequently as once a week for a definite price or consideration paid for by not less than fifty per cent of those to whom distribution is made, having a second class mailing privilege, being not less than four pages, published continuously during the immediately preceding one-year period, and circulated generally in the political subdivision in which it is published. Such publication must be of a type to which the general public resorts for passing events of a political, religious, commercial, and social nature, current happenings, announcements, miscellaneous reading matter, advertisements, and other notices.

{¶ 6} In 2006, the Ohio legislature authorized a 22-member task force to study local government public notice requirements. In 2011, the Ohio legislature amended various sections of the Revised Code that pertain to legal publication in newspapers, including R.C. 7.10 and 7.12. *See* Am.Sub.H.B. No. 153 (2011).

{¶ 7} After the 2011 amendments, and as subsequently amended in 2012 and 2014, R.C. 7.10 currently provides that, except as provided in R.C. 2701.09, "all legal advertisements, notices, and proclamations shall be printed in a newspaper of general

circulation and shall be posted by the publisher of the newspaper on the newspaper's internet web site, if the newspaper has one. * * *"   In addition, as revised by Am.Sub.H.B. 153, R.C. 7.12 now provides:

(A) Whenever a state agency or a political subdivision of the state is required by law to make any legal publication in a newspaper, the newspaper shall be a newspaper of general circulation.   As used in the Revised Code, "newspaper" or "newspaper of general circulation," * * * is a publication bearing a title or name that is regularly issued at least once a week, and that meets all of the following requirements:

(1) It is printed in the English language using standard printing methods, being not less than eight pages in the broadsheet format or sixteen pages in the tabloid format.

(2) It contains at least twenty-five per cent editorial content, which includes, but is not limited to, local news, political information, and local sports.

(3) It has been published continuously for at least three years immediately preceding legal publication by the state agency or political subdivision.

(4) The publication has the ability to add subscribers to its distribution list.

(5) The publication is circulated generally by United States mail or carrier delivery in the political subdivision responsible for legal publication or in the state, if legal publication is made by a state agency, by proof of the

filing of a United States postal service "Statement of Ownership, Management, and Circulation" (PS form 3526) with the local postmaster, or by proof of an independent audit of the publication performed, within the twelve months immediately preceding legal publication.

{¶ 8} In summary, the amendments to R.C. 7.12 "added requirements to the length of the prior publishing period; added more specific format and greater page requirements; added a new method of delivery, by carrier; added more specific content requirements; and through the content requirements, maintained the necessity for the publication to be of a type that the public uses for current happenings. The legislation also deleted the requirement that the publication be paid for by at least 50% of those to whom it is distributed. Finally, the amendments added requirements for distribution lists and circulation qualifications." *In re Brothers Publishing Co., L.L.C.*, 2d Dist. Darke No. 2013 CA 6, 2014-Ohio-133, ¶ 44.

{¶ 9} The 2011 amendments also added R.C. 7.12(B), which permits a "person who disagrees that a publication is a 'newspaper of general circulation'" to "deliver a written request for mediation to the publisher of the publication and to the court of common pleas of the county in which is located the political subdivision in which the publication is circulated * * *." R.C. 7.12(B) requires the court of common pleas to appoint a mediator and states that "the parties shall follow the procedures of the mediation program operated by the court."

## II. Factual and Procedural History

{¶ 10} *The Early Bird* is a weekly publication, circulated to approximately 28,000 addresses, predominantly in Darke County, Ohio, but also in surrounding counties.

Within Darke County, the publication is delivered for free by carriers, who are independent contractors. A small percentage of the weekly publication is mailed to customers outside of Darke County at a set cost, and copies are available for purchase from the newspaper's offices. *The Early Bird* is written in English and consists, on average, of 40% editorial content, covering local news, politics, police beat, obituaries, editorials, and the like.

{¶ 11} *The Early Bird* was established in 1968 by John and Carol Ball, and was purchased in June 2012 by brothers Fred and Keith Foutz, who operate the newspaper under the entity Brothers Publishing Company, L.L.C. On September 10, 2012, the Darke County Prosecuting Attorney issued an opinion that *The Early Bird* was a newspaper of general circulation, as defined by R.C. 7.12(A), which enabled state agencies and political subdivisions to the use *The Early Bird* for legal notices. Pursuant to R.C. 7.12(B), Civitas Media, which publishes *The Daily Advocate*, challenged the prosecutor's determination by delivering a written request for mediation to Brothers Publishing and to the Darke County Court of Common Pleas. The court conducted informal mediation, and the attendees apparently agreed that a declaratory judgment action was necessary to resolve the dispute.[1]

{¶ 12} In October 2012, Brothers Publishing filed a petition for declaratory judgment in the trial court, seeking a declaration that it is a newspaper of general publication for purposes of R.C. 7.12. Civitas Media filed a brief opposing Brothers Publishing's petition, claiming that *The Early* Bird did not meet the fourth and fifth

---

[1] Neither the prosecutor's opinion nor Civitas Media's written request for mediation was made part of the court's record. In addition, there was no entry documenting the informal mediation held by the court and the result of that mediation. Nevertheless, it is undisputed that these events occurred.

requirements of R.C. 7.12, which require, respectively, that the publication have the ability to add subscribers to its distribution list and have either proper registration with the local postmaster or proof of a requisite independent audit to demonstrate its circulation. Civitas Media attached several documents to support its position, including the task force report and an affidavit from former State Representative Kathleen Chandler, a member of the task force; Chandler opined about the legislative intent of the bill and specific provisions of the bill. Brothers Publishing filed a reply memorandum, also attaching several exhibits to support its contention that the fourth and fifth requirements were satisfied, including a "Newspaper Publisher's Statement" for the six-month period ending March 31, 2011, as proof of an independent audit.

{¶ 13} On December 3, 2012, the trial court issued a decision and entry, concluding that *The Early Bird* qualified as a newspaper of general circulation within Darke County, Ohio, conditioned on Brothers Publishing's filing a newspaper's statement that audited a time period within 12 months of the date of the prosecutor's opinion. In reaching its decision, that trial court rejected the legislative materials provided by Civitas Media and concluded that Brothers Publishing's exhibits indicated that it had a distribution list and the ability to add subscribers. In addition, the court found that the publisher's statement satisfied the requirement of an independent audit. However, because the audit had not been performed within the last 12 months immediately preceding the filing of the petition for declaratory judgment, the court held that *The Early Bird* had not satisfied R.C. 7.12(A)(5).

{¶ 14} Civitas Media appealed the trial court's decision. *In re Brothers Publishing Co., L.L.C. v. Civitas Media, L.L.C.*, 2d Dist. Darke No. 2012 CA 14. On

January 23, 2013, a month after the notice of appeal was filed, Brothers Publishing filed a supplement to the record, which consisted of an audit report for the period of July 1, 2011 through September 30, 2012.

{¶ 15} On May 20, 2013, we dismissed the appeal for lack of a final appealable order. *In re Brothers Publishing Co., L.L.C.* (Decision and Entry, May 20, 2013). We noted that we could not consider Brothers Publishing's supplemental filing (the audit report) and, depending on the adequacy of Brothers Publishing's filing in the trial court, further proceedings in the trial court would be necessary. We concluded that, while a declaratory judgment action is a special proceeding for purposes of R.C. 2505.02, "the trial court's order did not affect a substantial right of Civitas because the order contemplated further action."

{¶ 16} On May 28, 2013, a week after our dismissal of the appeal, the trial court issued another decision and judgment entry, indicating that it had considered the supplement to the record and the audit report filed on January 23, and that it had reviewed and reconsidered its December 3, 2012 decision. The court declared that *The Early Bird* qualified as a newspaper of general circulation within Darke County and could receive notice for legal publication pursuant to R.C. 7.12.

{¶ 17} Civitas Media appealed the May 28, 2013 judgment, raising five assignments of error. *In re Brothers Publishing Co., L.L.C.*, 2d Dist. Darke No. 2013 CA 6, 2014-Ohio-133. These assignments of error challenged the trial court's procedures in resolving the action, the adequacy of Brothers Publishing's evidence, the trial court's failure to consider Chandler's affidavit and the affidavit of another individual, Frank Deaner, regarding the intent of the changes to R.C. 7.12, and the trial court's conclusion

that *The Early Bird* was a newspaper of general circulation.   *Id.*

{¶ 18}   In our January 17, 2014, Opinion, we agreed with Civitas Media that the procedures used by the trial court to resolve the action did not comport with R.C. 7.12, which required the appointment of a mediator by the trial court, and the action did not proceed in the same manner as other civil actions, as required by the Declaratory Judgment Act.   *Id.* at ¶ 25, ¶ 28.   We further held that, after we dismissed Civitas Media's first appeal, the trial court erred in entering judgment without allowing the parties input about the procedure and without providing Civitas Media an opportunity to challenge the audit report.   *Id.* at ¶ 29.   We held that the trial court's decision "must be reversed and remanded, so that Civitas can challenge the audit report."   *Id.* at ¶ 33.

{¶ 19}   Addressing the adequacy of the evidence, we noted that the "factual record is extremely sparse," *id.* at ¶ 35, and that the "affidavit attached to *The Early Bird*'s trial court brief does not provide sufficient information to allow the court to decide the issues being contested."   *Id.* at ¶ 37.   We further agreed with Civitas Media that the audit report before the trial court was insufficient to demonstrate compliance with the fifth requirement of R.C. 7.12(A).   *Id.* at ¶ 71.   We noted that Civitas Media "waived the lack of compliance with R.C. 7.12(A)(1), (2), and (3)."   *Id.* at ¶ 36.

{¶ 20}   Finally, we addressed whether R.C. 7.12 was ambiguous and whether the trial court erred in failing to consider the affidavits related to the legislative intent in modifying R.C. 7.12.   We found a portion of R.C. 7.12(A)(4) to be ambiguous, reasoning:

>         We agree in part with the trial court's apparent conclusion that the
> statute is not ambiguous.   Although different meanings might be attributed
> to the word "subscribe," R.C. 7.12, as amended, does not require that

subscriptions be paid. In fact, the statute as amended eliminates the requirement that at least 50% of the newspaper's subscriptions be paid. The only apparent requirement in the amended statute is that a newspaper must have the ability to add an individual to its distribution list, upon receiving notice that the individual wishes to receive the paper.

On the other hand, we agree with Civitas's argument that the meaning of "distribution list" cannot be extended, as here, to include the *ways* in which the paper is delivered, i.e., "31 paid home subscriptions, 26,845 unpaid home delivery, 14 unpaid mail delivery, 322 unpaid residential bulk distribution, 165 unpaid non-residential bulk distribution." Decision and Judgment Entry, Doc. # 10, p. 7. According to Civitas, this extension ignores the plain meaning of the word "list." In addition, Civitas contends that the legislature intended to exclude free, total market coverage newspapers from the definition of qualifying newspapers, because everyone receives the product for free, whether it is wanted or not. Civitas stresses that the legislature was concerned with assuring that public notices appear in publications that individuals want to receive and are likely to read.

The legislature did not define "distribution list." "In the absence of any statutory definition of the requisite verification, we must apply the word's usual, normal, or customary meaning." *Chari v. Vore*, 91 Ohio St.3d 323, 327, 744 N.E.2d 763 (2001), citing *State ex rel. Cuyahoga Cty. v. State Personnel Bd. of Review*, 82 Ohio St.3d 496, 499, 696 N.E.2d 1054 (1998),

and R.C. 1.42. According to R.C. 1.42, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage."

"Distribute" is commonly defined as " * * * to give out or deliver esp. to members of a group (~ newspapers) (~ leaflets) * * *." Webster's Ninth New Collegiate Dictionary 368 (1991). "List" is also commonly defined as " * * * a simple series of words or numerals (as the *names of persons* or objects) (a guest ~)." (Emphasis added.) *Id.* at 697, 696 N.E.2d 1054.

Reading the meaning of distribution list as simply encompassing a list of types of deliveries renders the requirement of a "distribution list" -- and the ability to add "subscribers" meaningless. Because the legislature could have been more clear with respect to this requirement, we conclude that R.C. 7.12(A)(4) is ambiguous.

* * *

On remand, the trial court should consider the factors listed in R.C. 1.49. We note that while the trial court did not apparently find the statute ambiguous, the court, in what appears to be dicta, indicated that it would not use the affidavits and task force report, in any event, because it did not find these materials appropriate under R.C. 1.49.

*In re Brothers Publishing*, 2d Dist. Darke No. 2013-CA-6, 2014-Ohio-133, at ¶ 48-54.

**{¶ 21}** As to whether Chandler's affidavit and the task force report fell within those items that the trial court should consider, we held that "the trial court should have considered Chandler's affidavit and the report of the task force, as they were relevant

background information on the amendments to R.C. 7.12." *Id.* at ¶ 62. However, "[t]he weight to be given to these materials is for the trial court, in the first instance, on remand." *Id.* We noted that we did not "disagree that trial courts should be cautious about considering statements of individual lawmakers." *Id.* at ¶ 64. (For reasons we need not discuss, we agreed with the trial court that Frank Deaner's affidavit should not have been considered.) We reversed the trial court's judgment and remanded for further proceedings.

{¶ 22} Upon remand to the trial court, the trial court ordered the parties to engage in mediation, and it appointed a mediator to conduct the mediation. On March 6, 2014, the mediator filed a report indicating that no settlement could be achieved without a resolution of the underlying legal questions. The court subsequently held a scheduling conference with counsel and issued a scheduling order.

{¶ 23} On May 30, 2014, the trial court held an evidentiary hearing. The parties stipulated that *The Early Bird* satisfies the first three requirements of R.C. 7.12(A), and that the issues before the court were requirements four and five under the statute. Keith Foutz, co-owner of *The Early Bird*, was the sole witness. Brothers Publishing offered nine exhibits, all of which were admitted.

{¶ 24} Civitas Media offered two exhibits: the affidavit of Kathleen Chandler and the task force report. Civitas Media argued that our January 17, 2014, Opinion and the law of the case doctrine required the trial court to consider her affidavit; Brothers Publishing asserted that Chandler should have testified in person and that her affidavit was inadmissible hearsay. Although the trial court indicated that the Rules of Evidence would not permit the affidavit to be admitted, it ruled that "as a matter of the law of the

case, [it was] going to consider those exhibits."

**{¶ 25}** In response, Brothers Publishing proffered an affidavit from Jim Haigh, current government affairs consultant of the Mid-Atlantic Community Papers Association, for the purpose of rebutting Chandler's affidavit. The court indicated that it would defer ruling on that affidavit and that it would indicate in its decision whether it considered Haigh's affidavit to be admissible.

**{¶ 26}** On July 1, 2014, the trial court issued a decision and entry, which again held that *The Early Bird* was a newspaper of general circulation in Darke County and was eligible to publish legal notices. The trial court first found that *The Early Bird* has the ability to add subscribers to the newspaper; the court based its conclusion on the newspaper's geographic delivery maps, its list of those who chose to receive the newspaper by mail, and its list of persons who wish to terminate and/or temporarily suspend delivery. The court noted that there was no requirement that recipients pay for the newspaper. Second, the court found that *The Early Bird* possessed a "distribution list." The court relied upon the maps and route information showing the addresses where the newspaper is distributed, the list of individuals who receive the newspaper by mail, and the newspaper's identification of individuals who do not receive the newspaper. Finally, the court found that Foutz's testimony and Exhibits 8 and 9, which were audit reports of the circulation of the newspaper, satisfied R.C. 7.12(A)(5). We note that, in ruling that *The Early Bird* is a newspaper of general circulation, the trial court indicated that it had considered, but given "little evidentiary weight," to Chandler's affidavit. The decision reflects that the trial court did not consider Haigh's affidavit.

**{¶ 27}** Civitas Media appeals from the trial court's July 1, 2014 ruling, raising

three assignments of error, which we will address together. Amicus Curiae Ohio Newspaper Association has filed a brief supporting Civitas Media's position. Amicus Curiae Community Papers of Ohio and West Virginia has filed a brief in support of Brothers Publishing.

### III. Assignments of Error and Standard of Review

{¶ 28}  Civitas Media's assignments of error state: (1) "The Trial Court Reached its Decision in the Absence of Adequate Evidentiary Materials," (2) "The Trial Court Erred in Finding *The Early Bird* to be a Newspaper of General Circulation as a Matter of Law," and (3) "The Trial Court Erred in Concluding that *The Early Bird* was a Newspaper of General Circulation Based Upon the Evidence."

{¶ 29}  In its assignments of error, Civitas Media claims that the trial court erred in determining that *The Early Bird* is a newspaper of general circulation. Civitas Media asserts that the trial court misinterpreted the requirements of R.C. 7.12(A)(4), that the trial court gave too little weight to the affidavit of Kathleen Chandler, and that Brothers Publishing's evidence did not demonstrate that the requirements of R.C. 7.12(A)(4) and (5) were met. In essence, Civitas Media claims that the trial court's judgment was against the manifest weight of the evidence.

{¶ 30}  "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury [or other fact finder] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in

inducing belief.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 31} An appellate court applies the same manifest-weight-of-the-evidence standard in criminal and civil cases. *Eastley* at ¶ 17. The appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. A court of appeals "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 19, ¶ 21. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983), cited with approval in *Thompkins* at 387.

### IV. Affidavit of Kathleen Chandler and Legislative History

{¶ 32} We begin with the trial court's decision to afford "little evidentiary weight" to the affidavit of former State Representative Kathleen Chandler.

{¶ 33} Chandler's affidavit stated that she was a member of the 22-member task force that studied changes to R.C. 7.12, and that "[b]road revisions to the public notice statutes were voted upon by the Task Force and were included in the final report, which was delivered to the Governor, Senate President and Speaker of the House. Those revisions – including a new definition for 'newspapers of general circulation' – became the framework for legislation." Chandler stated that she authored draft legislation, and State Representative Gardner ultimately sponsored the bill that was passed into law.

**{¶ 34}** Chandler's affidavit addressed the requirement in R.C. 7.12(A)(4) that a "publication has the ability to add subscribers to its distribution list." She stated:

In regard to requirement (4), there was clear intent to require a qualifying publication to provide proof of distribution by maintaining a distribution list with the ability to add subscribers to such list. In other words, the law requires that "X" number of households have "invited" the publication. Indeed, there was deliberate intent regarding item (4) that mass delivered publications, without receiving an "invitation" to be delivered to such household by the current occupier or resident (i.e., having the ability to add subscribers to a distribution list), would not be considered as a newspaper of "general circulation," and therefore, not qualify as a publisher of Legal Notices.

Furthermore, if the publication cannot produce a published "Statement of Ownership, Management, and Circulation" (must be published on or nearest publication date to October 1) or an independent audit (as required by item 5) OR cannot produce a defined "distribution list" that clearly defines the publication as being invited into the home, whether free or paid, then the publication is not a "newspaper of general circulation" as defined by O.R.C. 7.12.

When considering provisions (4) and (5), the underlying intent is for government to ascertain not only the geographic penetration of the publication, but also the likelihood that the publication is being read and not simply discarded as uninvited print media.

Exhibit D, Chandler Affidavit, p. 2.

**{¶ 35}** We left to the trial court's discretion the degree to which Chandler's affidavit would be considered, and we cautioned against giving undue weight to statements of individual legislators. *In re Brothers Publishing*, 2d Dist. Darke No. 2013 CA 6, 2014-Ohio-133, at ¶ 62, ¶ 64. Here, the trial court gave six reasons for giving Chandler's affidavit little weight:

(1) though a legislative member of the Local Government Public Notice Task Force, there is no indicia that Ms. Chandler attended hearings and meetings or has any personal knowledge of the contents of such meetings and hearings; (2) though Ms. Chandler apparently drafted the bill to revise R.C. 7.12, there was no indication whether changes were made during the legislative process and, if any, how any changes may have impacted the purposes and intention of the new law; (3) there is no indication whether Ms. Chandler was personally involved in any legislative hearings or debates on the bill upon which to then express statements of legislative intent; (4) her understandings of legislative intent are personal and not necessarily those of the Legislature and/or individual members; (5) Ms. Chandler did not disavow any economic, political or other interest in the outcome of the issues about which she opined; and (6) it is uncertain whether she supported or opposed the bill when it was passed.

The trial court further stated that, in the absence of cross-examination, "it can merely be said that Ms. Chandler was the drafter of a bill that was sponsored by another legislator and upon which she ultimately voted."

{¶ 36} We find no error in the trial court's decision to afford Chandler's affidavit little weight. Although Chandler was a member of the task force, neither the task force report nor the legislative history of R.C. 7.12 supports a conclusion that the task force, and subsequently the Ohio legislature, had a singular, unanimous intent regarding the language of R.C. 7.12(A)(4).

{¶ 37} The May 31, 2008 task force final report, which was admitted as Exhibit E, contains a list of recommendations to be voted on, with various recommendations supported by different members of the task force. The report also included summaries of commentary from different task force members, each of whom represented a different interested party (i.e., daily newspapers, township government, county recorders, county auditors, prosecuting attorneys, county engineers, and Ohio Legal Daily Coalition). We find nothing in the task force final report to indicate that the newspapers of general circulation must be "invited," and several task force members supported including free newspapers within the definition of "newspaper of general circulation."

{¶ 38} Chandler stated that she authored draft legislation based on the task force recommendations. Chandler sponsored H.B. 220, which was introduced to the Ohio House of Representatives on June 16, 2009.[2] The bill indicated that it was intended to implement the task force's recommendations by, among other things, "authorizing legal publication to be made in a newspaper of general circulation" and "eliminating certain publication and postal privilege requirements." As introduced, H.B. 220 contained six requirements for a newspaper to qualify as a "newspaper of general circulation," including

---

[2] Draft versions of bills, bill analyses, fiscal notes, voting information, Governor's veto messages, and other documents related to draft legislation are available on the Ohio Legislative Service Commission's website.

that not less than 50% of those to whom the publication is distributed pay a definite price for it (thus precluding free publications) and that the publication have "the ability to add to its distribution list subscribers in the political subdivision." The definite price requirement is inconsistent with some of the views expressed in the task force recommendations and commentary.

{¶ 39} By the time Sub.H.B. 220 was passed by the Ohio House of Representatives, the definite price requirement had been eliminated, but the proposed revisions of R.C. 7.12 still included the requirement that the publication have the ability to add subscribers to its distribution list. H.B. 220 was not passed by the Ohio Senate.

{¶ 40} While H.B. 220 was pending, the General Assembly did pass Am.Sub.H.B.1, which also sought to amend R.C. 7.12 by eliminating the definite price and second class mailing requirements of the existing statute, and by adding requirements for the percentage of editorial content and "audited circulation." Am.Sub.H.B.1 made no mention of subscribers or distribution lists. The portion of the bill relating to R.C. 7.12 was vetoed, so that revisions to R.C. 7.12 could be considered as part of a comprehensive bill on the subject, H.B. 220. *See* Governor's Budget Message for Am.Sub.H.B.1.

{¶ 41} When originally presented to the House Committee, the language of H.B. 153 mirrored that of Am.Sub.H.B.1. An amendment was passed in the House Finance and Appropriations Committee, which revised the proposed changes to R.C. 7.12 to match the wording in Sub.H.B. 220. *See* H.B. 153, House Amendment 2112. Am.Sub.H.B. 153 was enacted, creating the current requirements of R.C. 7.12.

{¶ 42} Upon consideration of the available legislative history and the task force

report, the trial court did not abuse its discretion in concluding that Chandler's affidavit reflected the views of an individual legislator and that her affidavit should be given little weight in interpreting R.C. 7.12(A)(4).

## V. Requirements of R.C. 7.12(A)(4) and Manifest Weight

{¶ 43} As stated above, R.C. 7.12(A) requires that a newspaper meet several requirements, including (1) be in English, and not less than 8 pages in broad sheet format, or 16 pages in tabloid format; (2) contain at least one-fourth (or 25%) editorial comment, including local news, political information, and local sports; (3) be continuously published for at least 3 years immediately prior to the legal publication; (4) have the ability to add "subscribers"' to its "distribution list"; and (5) be circulated generally within the jurisdiction, with proof of circulation by the U.S. postal service through PS form 3526 or by an independent audit of the publication within the 12 months immediately preceding legal publication. R.C. 7.12(A)(1)-(5). Civitas Media does not dispute that *The Early Bird* satisfies R.C. 7.12(A)(1)-(3).

{¶ 44} Civitas Media argues that Brothers Publishing failed to demonstrate that *The Early Bird* satisfies R.C. 7.12(A)(4), because the use of the term "subscriber" reflected an intent that the recipient of the publication provide payment or consideration. As quoted above, we rejected this interpretation in our prior Opinion, stating that "R.C. 7.12, as amended, does not require that subscriptions be paid." *In re Brothers Publishing*, 2d Dist. Darke No. 2013-CA-6, 2014-Ohio-133, at ¶ 48. We recognized that the 2011 amendments eliminated the requirement that at least 50% of the newspaper's subscriptions be paid, and that "[t]he only apparent requirement in the amended statute is that a newspaper must have the ability to add an individual to its distribution list, upon

receiving notice that the individual wishes to receive the paper." *Id.*

{¶ 45} Civitas Media and Ohio Newspaper Association urge us to reconsider that interpretation, citing the definition of "subscribe" in Webster's New World College Dictionary (4th Ed.2000), 1427, and the legislature's use of the term "subscriber," which Ohio Newspaper Association states is "a term introduced for the first time in the recent revisions to R.C. §7.12." We find no fault with our (and the trial court's) conclusion that payment is not a requirement under R.C. 7.12.

{¶ 46} We reiterate that former R.C. 7.12 included a requirement that the newspaper be distributed "for a definite price or consideration paid for by not less than fifty per cent of those to whom distribution is made"; that requirement was eliminated by the amendment to R.C. 7.12 in Am.Sub.H.B. 153. To the extent that the task force report provides any indication of legislative intent, the report contained suggestions that free newspapers be permitted to publish legal notices. For example, the Township Government and County Auditors Recommendations included the recommendation to "[a]mend the requirements for qualifying newspapers to include free newspapers, including newsweeklies." The report also included commentary from various task force members, some of whom also recommended that the requirements for a newspaper of general circulation be amended so "certain free newspapers" could publish public notices.

{¶ 47} Reviewing the history of proposed changes to R.C. 7.12, the provision requiring the ability to add "subscribers" to distribution lists first appears in H.B. 220, as introduced, which also included a payment requirement. Although the payment requirement was eliminated in later drafts and in H.B. 153, the term "subscriber" remained

in the requirement concerning distribution lists. Under these circumstances, the fact that the term "subscriber" was added to the current version of R.C. 7.12 does not necessarily reflect an intent that recipients pay for the publication. Indeed, possible reasons for the continued use of the term "subscriber" include that the drafters simply failed to modify that term once the payment requirement was eliminated or that the drafters intended that newspapers of general circulation have the ability to add recipients of the publication upon request. We therefore decline to alter our conclusion that "R.C. 7.12, as amended, does not require that subscriptions be paid."

{¶ 48} Civitas Media further claims that the "distribution list" must be a list demonstrating that the recipients "invited" the publication to their home or business. We find no indication of that requirement in either the statute, the task force final report, or draft bills proposing changes to R.C. 7.12. Further, the elimination of the requirement that the publication have a second class mailing privilege and the addition of an option to establish circulation by an independent audit undermine the contention that distribution must be only to those specific residences or businesses that request delivery by name. The statute does not require that recipients be identified by name.

{¶ 49} In light of these interpretations, the trial court's finding that *The Early Bird* satisfies R.C. 7.12(A)(4) is not against the manifest weight of the evidence. Keith Foutz testified that *The Early Bird* is distributed predominantly by carriers and, to a much lesser extent, by mail. It is delivered to approximately 28,000 homes and businesses, with the vast majority in Darke County. Although the *The Early Bird* does not identify its recipients by name, it maintains approximately 125 delivery routes for its carriers to follow; *The Early Bird* informs carriers of addresses within those routes that should not

receive the publication. An example of a delivery route, suggested directions for carriers, and a stop list were admitted as Exhibits 5, 6, and 7. Upon review of the evidence, the trial court reasonably concluded that Brothers Publishing's evidence demonstrated a distribution list of the addresses to which *The Early Bird* are delivered.

{¶ 50} In addition, Brothers Publishing presented evidence that it was able to add and subtract customers from its distribution list. Foutz testified that *The Early Bird* was able to adjust the number of copies that were distributed and to add or subtract customers from its distribution list on a weekly basis. Foutz identified an example of a start/stop request form that is used to begin or terminate distribution to addresses and also to document delivery concerns. Exhibit 3 was a list of individuals who had requested distribution of *The Early Bird* to be started. In addition, Fourtz testified that the publication has approximately 37 mail subscriptions. These individuals, all located outside of Darke County, pay for the publication to be delivered; a list of these individuals, who Foutz referred to as subscribers, was presented as Exhibit 4. Based on Brothers Publishing's evidence, the trial court reasonably concluded that *The Early Bird* had the ability to add subscribers to its distribution list, both within and outside of Darke County. The trial court's conclusion that *The Early Bird* satisfied R.C. 7.12(A)(4) was not against the manifest weight of the evidence.

### VI. Requirements of R.C. 7.12(A)(5) and Manifest Weight

{¶ 51} Civitas Media further claims that the trial court erred in concluding that Brothers Publishing demonstrated that *The Early Bird* satisfied R.C. 7.12(A)(5).

{¶ 52} R.C. 7.12(A)(5) requires proof that the publication is circulated generally; that proof may be established by filing PS form 3526 or by the performance of an

independent audit of the publication within a stated time period. Foutz testified that there are four major publication auditing firms in the United States, and that an auditing system has been developed nationwide. During the audit, the auditor validates the publication's distribution numbers and the printing amounts that occur. The auditor also contacts readers to verify that distribution had, in fact, occurred. Foutz stated that "the audit process serves to validate our distribution numbers to our advertisers so that we don't say that we are distributing 28,000 and in reality only distributing 10 or 12 or 15."

{¶ 53} Foutz stated that *The Early Bird* uses Circulation Verification Council, which has thousands of clients, as its auditor. At the hearing, Brothers Publishing submitted and Foutz identified Exhibit 9 as a Publication Audit Report for the period October 1, 2012 through September 30, 2013, prepared by Circulation Verification Council. The "publication information" portion of the audit report reflected, among other things, that *The Early Bird* had an average net circulation of 27,969, was distributed weekly, and had 99.9% unpaid circulation/0.1% paid circulation. Ninety-eight percent of the delivery was performed by carriers. Under "circulating pricing," the audit report stated that "The Early Bird is a controlled circulation weekly with a cover price of $1.00. Annual mail subscription rate: Contact Publisher." Page two of the report provided more detailed information about circulation, distribution, and net press averages.

{¶ 54} Civitas Media argues that the audit report is "full of ambiguity," satisfies "no appropriate evidentiary standard," and that "[n]o one verified the purported data contained therein." However, Foutz testified generally about what publication auditors do and that *The Early Bird* uses Circulation Verification Council, an auditor with a large customer base. Civitas Media presented no evidence that Circulation Verification

Council's audit report for *The Early Bird* failed to comport with industry standards for an independent audit. The trial court's conclusions that *The Early Bird* is circulated generally and that Brothers Publishing provided proof by performance of an independent audit of the publication within the required time period were not against the manifest weight of the evidence.

## VII. Conclusion

**{¶ 55}** Civitas Media's assignments of error are overruled. The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Gary J. Leppla
Phillip J. Leppla
Louis A. Colombo
Nicole L. Pohlman
Eric H. Brand
Luther L. Liggett, Jr.
David M. Scott
Margaret B. Hayes
Hon. Jonathan P. Hein